UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSAFOS DE AZTLAN CHAVARIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　　Defendant. | Case No. 16-cv-02667-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 21 |

## INTRODUCTION

Plaintiff Consafos De Aztlan Chavarin ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 18, 21. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS IN PART** Plaintiff's motion and **DENIES** Defendant's cross-motion for the reasons set forth below.

## BACKGROUND

Plaintiff was born in 1972. AR 170. His earning records show he began working in 1988 and worked through part of 2011. AR 175-83. In May 2011, Plaintiff began developing severe health problems. He underwent several surgical procedures to correct diverticulitis and address subsequent complications, including revision of a colostomy and bowel perforation. Post-surgery imaging revealed no physical abnormalities, but Plaintiff continued to experience acute pain in his abdomen and lower back. Plaintiff also gained significant weight; suffered from degenerative disc disease; developed carpal tunnel syndrome and plantar fasciitis; and was depressed and attempted

suicide. He applied for disability benefits in 2011, initially representing he could not work as a result of diverticulitis and sleep apnea. He supplied additional evidence to support his contention that he could not work because of his back and neck, and depression.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On September 20, 2011, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on May 1, 2011. AR 154. On March 14, 2012, Plaintiff filed an application for Title XVI benefits, also alleging an onset date of May 1, 2011. AR 156. On March 1, 2012, the Social Security Administration ("SSA") denied Plaintiff's claims, finding that Plaintiff did not qualify for disability benefits. AR 59, 69. Plaintiff subsequently filed a request for reconsideration, which was denied on July 1, 2012. AR 70, 71. On September 5, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 84. ALJ Nancy Lisweski conducted a hearing on May 19, 2014. AR 40. Plaintiff testified in-person at the hearing and was represented by Anna Befu. AR 42; *see also id*. at 43 (Plaintiff's brief was not provided to ALJ until morning of hearing). The ALJ also heard testimony from Vocational Expert ("VE") Jeff Beeman.

### A.   Plaintiff's Testimony

Plaintiff testified he was 42 years old, five-foot-six-inches tall, and between 250 and 260 pounds. AR 45. He testified he could not work because of back and foot pain, depression, and lack of bowel and bladder control. AR 45-46. Carpal tunnel syndrome causes his hands to "lock up" at times at night or when performing an activity; they also shake. AR 46-47. He walks with a cane because he has trouble with his balance. AR 47. He has suicidal thoughts. AR 46. He has difficulties using the restroom once per day, but he can sometimes go "a couple of days without really having any issues.". AR 46. Historically, he has not sought mental health counseling or indicated to treaters that he was depressed because he was afraid he "might be locked up, [or] put in a padded room." AR 51-52. He started taking Paxil for depression in January 2013, and his dosage has increased. AR 52-53. He has abstained from alcohol since January 2011. AR 50. He prefers to isolate himself and not be around a lot of people; he does not want to go outside. AR

53-54.

B. **Vocational Expert's Testimony**

VE Beeman testified Plaintiff's past jobs—heavy equipment operator, maintenance position, light installer—all qualified as "heavy" or "medium" work. AR 54-55. He identified three sedentary occupations an individual of Plaintiff's age, education, and background could perform: order clerk, production/machine operator, and assembler. AR 56. When the ALJ asked him whether the same hypothetical individual could perform those occupations if he needed a cane to ambulate for distances of more than two blocks, the VE testified the use of a cane should not affect the ability to perform those three sedentary occupations. AR 56. However, when the ALJ asked whether the same hypothetical individual could work if he was limited to sitting for four hours in a workday and standing and walking for two, the VE testified that person would not be employable. AR 56 ("[L]ess than eight hours, . . . not employable.")

C. **Medical Evidence**

1. Plaintiff's Medical Records

Plaintiff frequently visited Highland Hospital between May 2, 2011 and May 22, 2014. *See* AR 244-575. Plaintiff's treating physicians reported he was very pleasant, cooperative, alert, and in no obvious distress. AR 261, 266, 269, 330, 346, 416, 444, 545.

*a.   2011*

In May 2011, Plaintiff twice reported to the emergency department for abdominal pain, diarrhea, nausea, and vomiting; he was diagnosed with a perforated sigmoid colon with extensive phlegmon at the perforation site, but no discrete abscess formation. AR 268-69, 310. He was hospitalized for two weeks. AR 362. CT scans showed inflamed phlegmon but no other abnormalities. AR 245-48.

In June 2011, Plaintiff was again hospitalized and diagnosed with diverticulitis. AR 252.

In July 2011, he reported to the emergency department again and was referred to the department of surgery for diverticulitis. AR 303. A pelvic CT scan showed abnormal thickwalled incompletely distended urinary bladder; abnormal adjacent mid-sigmoid colon with bowel wall

3

thickening; and minimal surrounding fat stranding. AR 248. Plaintiff was diagnosed with a colovesicular fistula and underwent surgery for an end-colostomy for perforated sigmoid diverticulitis with colovesicular fistula. AR 298, 360. He was hospitalized for 9 days. AR 359-60.

### *b.     2012*

In January 2012, Plaintiff underwent another surgery for a diverting ileostomy and segmental sigmoid colon resection and colostomy takedown; gross microscopic features were compatible with diverticulitis with fistula formation. AR 339-40. He was hospitalized for 9 days. AR 347.

In May 2012, Plaintiff had an ileoscopy and colonoscopy; impressions were normal. AR 395-96. An MRI of his cervical spine showed partial congenital fusion of C4 and C5, with mild facet arthrosis and small posterior disk osteophyte complex and mild bilateral neural foraminal stenosis at C5-6. AR 391. An MRI of his lumbar region showed mild-to-moderate degenerative changes predominantly at L4-5 and L5-S1. AR 391-92. Plaintiff was hospitalized for 2 days for ileostomy takedown. AR 393.

In June 2012, Plaintiff reported to the emergency department with lower abdominal and back pain; he received Vicodin. AR 427-28.

In August 2012, Plaintiff was diagnosed with arthritis in the neck, neuropathy in the arm, and diarrhea. AR 424.

In September 2012, Plaintiff was seen at the hospital for low back and elbow pain. AR 421. His spinal stenosis was noted. *Id*. He walked with an assistive device and complained of incontinence in bed. AR 421, 423.

In October 2012, Plaintiff reported to the emergency department complaining of abdominal pain and vomiting. AR 416. He was diagnosed with leukocystosis. AR 417.

In December 2012, Plaintiff reported to the emergency department for pain in his lower abdominal, foot, leg, and bladder. AR 412. He was prescribed pain medication. AR 412-13.

### *c.     2013*

4

In February 2013, Plaintiff reported to the hospital for abdominal pain. AR 440. A pelvic CT scan showed scarring was stable and solid organs appeared stable. AR 463, 515. Plaintiff reported again to the hospital for low back pain after falling and was prescribed Vicodin. AR 454.

In March 2013, Plaintiff reported to the hospital for back pain and depression. AR 439. Doctors noted right foot pain, back injury after a slip and fall, and depression; Plaintiff reported he was having thoughts of hurting himself, so doctors increased his Paxil dosage. AR 439, 467. Plaintiff also was seen for rectal bleeding and sent home with medicine for his back pain. AR 456, 459.

In May 2013, Plaintiff was seen at the hospital for low back and neck pain. AR 437.

In July 2013, Plaintiff was evaluated in the neurology clinic. AR 533. Findings showed no specific spinal problems, but decreased sensory from right elbow to right fingers; leg raising provoked a left focal low back pain without any radiating symptoms. AR 533-38. Plaintiff discussed his incontinence with the neurologists. AR 532, 534. MRI and CT scans were "unrevealing" for any weakness or any clear distribution or pattern that might correlate to a spinal problem. AR 538-39.

In August 2013, Plaintiff reported to the hospital for diverticulitis of the colon, with increased pain and occasional diarrhea. AR 521-22. An abdominal CT scan was normal, apart from visible sutures. AR 526-27. Due to complaints of wrist pain, he also underwent an electromyogram and nerve conduction study were interpreted as showing mild carpal tunnel syndrome at right wrist. AR 530. Plaintiff was advised to avoid repetitive motion of right wrist and fingers; he also was advised to wear a splint at night and periodically during the day. AR 530. An MRI showed spondylosis at L5, hemangioma, and degenerative disc disease. AR 520. The spinal spondylosis was not significant. AR 520.

Between September and December 2013, Plaintiff reported four times to the hospital for low back and abdominal pain. Physical examinations showed no abnormalities, but imaging showed degenerative joint disease. AR 498, 504, 512, 513, 517. Although Plaintiff had been seen by the neurology department in the past for "questionable incontinence," it was noted he did not

5

have that anymore. AR 499. Plaintiff was encouraged to lose some weight. AR 499.

    *d. 2014*

   In March 2014, Plaintiff was seen at the hospital for a variety of ailments, including back pain and depression; he was given Vicodin. AR 468, 495. He was assessed for foot pain and diagnosed with lumbar facet spondylosis and obesity. AR 493, 547, 548, 550. Plaintiff was treated by several physicians: Dr. Kim noted Plaintiff had normal strength, intact sensation in the lower extremities, and negative straight leg rise (AR 550); Dr. Zorthain encouraged Plaintiff to lose weight (AR 496).

   In May 2014, Plaintiff was admitted to the psychiatric pavilion after a suicide attempt. AR 569. He was diagnosed with major depressive disorder that was recurrent and severe without psychotic features. AR 569-70. He had not taken his depression medication in two days. AR 569. He was released that day with medications. AR 574. He had a follow-up visit for depression in June 2014; treaters noted Plaintiff was awaiting his first therapy session and that he was on Paxil. AR 476, 478, 482.

   In June 2014, Plaintiff was seen for carpal tunnel syndrome of bilateral feet. AR 485. He was assessed for chronic pain in back and feet and was directed to follow-up with orthopedics for a shot, and "trying" Lyrica. AR 476. Dr. Thomas Nguyen examined Plaintiff on June 10, 2014 and discussed Plaintiff's case with Dr. Zorthain, who agreed with Dr. Nguyen's assessment and plan. AR 484. Dr. Nguyen assessed Plaintiff with "depression with recent suicidal attempt" and acknowledged Plaintiff's "other medical issues, which include depression and pain." AR 483, 484. Dr. Nguyen reported Plaintiff denied any suicidal ideation after his recent suicide attempt, stated he "feels well back to his baseline mental status," had a follow up for psychiatric therapy, was taking Paxil, and was being treated for chronic pain. AR 483. Dr. Nguyen suggested Plaintiff's pain "may be related to his weight issues" and was being treated conservatively with corticosteroid injection and daily pain medication (Vicodin and tramadol). AR 483-84. Dr. Nguyen indicated Plaintiff had not started Lyrica, and that Plaintiff was instructed to self-discontinue Lyrica if he noticed any change in mood. AR 482.

In July 2014, Plaintiff was seen for carpal tunnel syndrome and given a prescription for Lyrica. AR 474, 480. The orthopedic department examined Plaintiff for back pain, noting a bilateral L4-L5 and L5-S1 intraarticular facet injection was performed in April 2014; Plaintiff expressed interest in future injections and was directed to return on another day. AR 544-45. Plaintiff did not pick up his Lyrica prescription. AR 480.

2. <u>Assessments of Plaintiff's Residual Functional Capacity ("RFC")</u>

*a.     Dr. Robin Soffer*

Dr. Soffer examined Plaintiff on December 19, 2011 on behalf of the SSA. AR 328. She did not review outside medical records; she only reviewed Plaintiff's exertion questionnaire and his adult disability report. *Id.* Based on her examination, Dr. Soffer found Plaintiff was "currently" incapable of working an 8-hour workday: she opined Plaintiff could stand and walk for less than 2 hours in an 8-hour shift and for less than 30 minutes at a time, and that he could sit for less than 6 hours in an 8 hour workday. AR 332. She also found Plaintiff would need the opportunity to stretch and rest his hands for up to 5 minutes per hour because of carpal tunnel syndrome. *Id.* She noted the RFC assessment was "as of today's examination" and that Plaintiff's activity level was expected to be reduced by his upcoming surgery, which was expected to additional delays to his eventual recovery. AR 332. She makes no mention of depression or mental illness.

*b.     Dr. Barooyr Zorthain*

In July 2012, one Plaintiff's treating physician, Dr. Zorthain, completed a form for the SSA entitled "Medical Source Statement of Ability To Do Work-Related Activities (Physical)." AR 406-11. In relevant part, Dr. Zorthain opined Plaintiff could sit and stand for 2 hours at a time without interruption and walk 1 hour at a time without interruption; that in a regular workday he could sit a total of 6 hours, stand for a total of 1 hour, and walk for a total of 1 hour. AR 407. If the work day did not equal 8 hours, Plaintiff could lie down during the times he was not sitting, standing, or walking. AR 407. Dr. Zorthain based these limitations on "recent major abdominal surgery for complicated diverticular perforation" and degenerative disc changes of the spine, as

7

documented on an MRI. *Id*. He found Plaintiff's physical impairments did not limit his daily activities and were not expected to last for 12 consecutive months. AR 411. The form Dr. Zorthain completed does not ask for any input regarding mental conditions or limitations those conditions might create.

     *c. Dr. David Moskovitz*

  Dr. Moskowitz was also one of Plaintiff's treating physicians. Dr. Moskowitz indicated Plaintiff suffered from degenerative joint disease, as indicated by MRI findings of mild degenerative changes of vertebrae. AR 397. In the RFC questionnaire he completed for Plaintiff on October 9, 2012, Dr. Moskowitz diagnosed depression and chronic pain (neck and back), noting Plaintiff's chronic back pain was worsened by physical activities; "may be related to or worsened by depression[;]" and that the pain was being treated with medications, physical therapy, and light exercise at home. AR 397-98. Dr. Moskowitz opined Plaintiff's symptoms were severe enough to occasionally to frequently interfere with the attention and concentration needed to perform simple work tasks during a typical workday. AR 398. In relevant part, Dr. Moskowitz opined Plaintiff could stand/walk for 2 hours in an 8-hour work day, and could sit about 4 hours in a work day. AR 399. He also opined Plaintiff had significant limitations with reaching, handling, or fingering due to "tingling and numbness in his hands" but Dr. Moskowitz could not assess further details about the limitations. AR 400. When asked what degree of stress Plaintiff could tolerated, Dr. Moskowitz indicated Plaintiff "may be able to tolerate a low stress job" "with control of pain and depression." AR 399.

     *d. Dr. D. Flattery*

  Dr. Flattery examined Plaintiff on March 12, 2013 on behalf of the SSA. AR 402-05. He reported Plaintiff had suffered from chronic pain for one "1+ year," and that MRIs showed mild degenerative changes to the spine but were otherwise unremarkable. AR 402. He noted Plaintiff walked with a cane. AR 403. He opined Plaintiff could stand and walk for a total of less than 2 hours in an 8 hour work day, and sit for less than 6 hours in a total workday. AR 404. Based on Plaintiff's diagnosis of depression and his being prescribed medication for depression and

behavioral therapy, Dr. Flattery recommended Plaintiff be referred for an evaluation for behavioral health conditions that may prevent him from being able to work. AR 404.

### e.   Dr. Tanny Tantiyavarong

On September 30, 2014, Dr. Tantiyavarong completed an RFC questionnaire on behalf of Plaintiff. AR 576-81. She was another of Plaintiff's treating physicians at Highland Hospital, but she does not indicate the frequency and length of her contact with him. AR 576. She diagnosed low back pain (worse with exertion) and bilateral foot pain. AR 576. She also opined Plaintiff's emotional condition contributed to the severity of his symptoms and that Plaintiff was not a malingerer; she noted "depression vs. bipolar" when asked to indicate whether any psychological conditions affected Plaintiff's physical conditions. AR 577. Dr. Tantiyavarong opined Plaintiff's symptoms were severe enough to frequently interfere with the attention and concentration needed to perform simple work tasks. AR 577. In relevant part, she opined Plaintiff could stand/walk about 2 hours and sit about 4 hours in an 8-hour workday; sit for 30 minutes before having to get up; stand for 20 minutes at a time before needing to sit down or walk around; and would need to walk as often as possible every 30 minutes during a workday, for 5-10 minutes each time. AR 577-78. She noted Plaintiff had significant limitations with reaching, handling, and fingering: he could use his hands to grasp, turn, and twist 20 percent of the time, and could use his arms for reaching 20 percent of the time. AR 579.

The Appeals Officer ("AO") found Dr. Tantiyavarong's opinion did not provide a basis for changing the ALJ's decision because Dr. Tantiyavarong did not identify how long "the opined opinions have been present or are expected to last[;]" were based on subjective complaints of pain; there was no evidence of complaints of attention in the medical record; and "no mental status exam findings that suggest ongoing problems with attention and concentration." AR 2.

### D.   The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-

9

step sequential analysis to determine whether a Social Security claimant is disabled.[1]  20 C.F.R. §§ 404.1520(a), 416.920(a).  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled."  *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b); 416.920(b).  Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since May 1, 2011.  AR 24.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ determined that Plaintiff had the following severe impairments: diverticulitis, status post-surgery; cervical and lumbar degenerative disc disease; tarsal tunnel syndrome with bilateral feet pain; and morbid obesity.  AR 24.  The ALJ found some of Plaintiff's other conditions were not severe.  AR 24-25.  As is relevant here, the ALJ concluded Plaintiff's depression was not severe because "there is no evidence of any therapy or hospitalizations for suicide attempts except for one notation of a recent suicide attempt in June 2014."  AR 25 (citing Ex. 14F/19).  The ALJ also observed that Plaintiff's primary care physician only noted depression intermittently since March 2013.  *Id*.  The ALJ considered the four broad functional areas set out in the disability

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

10

regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (Paragraph B criteria) and concluded Plaintiff had mild limitations in activities of daily living; no limitation in social functioning; no limitation in concentration, persistence or pace; and no episodes of decompensation which have been of extended duration. *Id*. at 25-26.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings for Section 1.04 (degenerative disease). AR 26.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. §§ 404.1545(e), 416.945. Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work with an ability to occasionally climb stairs and ramps; never climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; and must not work at unprotected heights or around dangerous moving machinery. AR 26.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. §§ 404.1560(b)(1),

416.960(b). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined that Plaintiff could perform past relevant work as a heavy equipment operator, cable tester, and light installer, all of which were considered heavy work. AR 32.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpart P, Appendix 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform the requirements of order clerk, production/machine operator, and assembler— all jobs that could be found in sufficient numbers in the national economy. AR 33.

### E.     ALJ's Decision and Plaintiff's Appeal

On August 25, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 19-39. This decision became final when the Appeals Council declined to review it on April 13, 2016. AR 1-5. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On September 26, 2016, Plaintiff filed the present Motion for Summary Judgment. On December 8, 2016, Defendant filed a Cross-Motion for Summary Judgment.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as

adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

The ALJ carefully analyzed the record and documented the bases for her decisions. The undersigned finds the case nonetheless must be remanded because the ALJ failed to adequately develop the record regarding the impact of Plaintiff's depression on his limitations.

**A.     Severity of Depression, Weighing Medical Opinions, RFC Findings**

It is un-contradicted, even by the ALJ, that Plaintiff suffered from depression, was treated for depression with medication, attempted to commit suicide, and received counseling for depression. Drs. Moskowitz, Tantiyavarong, and Flattery noted Plaintiff was depressed and that he could only work 6 hours out of an 8-hour day. *See* AR 398. The ALJ rejected the Dr. Moskowitz's opinion that Plaintiff's depression would cause occasional to frequent interference with attention and concentration because "the treatment records do not show sufficient objective findings in support of 'severe' depression." AR 32 (citing Ex. 8F). The ALJ based her opinion in

part on the findings of Dr. Soffer, who examined Plaintiff in December 2011, comparatively early in Plaintiff's treatment history. AR 25.

The ALJ did not address Dr. Moskowitz's opinion that Plaintiff's depression contributed to his chronic pain. Because it was not before her, the ALJ did not address Dr. Tantiyavarong's diagnosis of depression and the limitations she noted in her RFC questionnaire, which were consistent with those of Dr. Moskowitz. Nor did the ALJ consider Dr. Tantiyavarong's finding that Plaintiff's depression contributed to his pain or limitations. The ALJ also did not address SSA Examiner Dr. Flattery's suggestion that Plaintiff should be referred for a behavioral health evaluation because of his history of depression; she did not refer Plaintiff for such an evaluation. She instead discounted Dr. Flattery's opinion because it was unsupported by the medical record and because Dr. Flattery failed to provide any findings in support of his assessment. AR 31-32. Each of these medical providers evaluated Plaintiff in person, and opined that he could only stand, sit, or walk 6 hours out of an 8-hour day, and opined that Plaintiff's depression contributed to his pain and/or limitations. The ALJ instead gave the most weight to the opinion of another of Plaintiff's treating physicians, Dr. Zorthain. The ALJ reasoned that Dr. Zorthain's opinion was the "most well supported" and "reflects best the claimant's function during the entire relevant period of this decision." AR 31. But Dr. Zorthain was not asked to evaluate the impact of Plaintiff's depression on his pain or his ability to work; indeed, his RFC form did not request any information about Plaintiff's mental condition. Thus, the ALJ and the AO rejected the opinions of three medical providers: two treaters who opined Plaintiff's emotional and psychological conditions affected his limitations and would interfere with his ability to do work and one SSA examiner who recommended Plaintiff be referred for a behavioral health evaluation. The ALJ and the AO rejected those three opinions based on the opinion of a treater who never opined about the impact of Plaintiff's pain, emotional condition, and psychological condition on his ability to do work. This was error.

First, the ALJ could not simply reject Dr. Moskowitz's opinion simply because it was "not well supported" by the medical evidence: this "means only that the opinion is not entitled to

14

'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527." *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting S.S.R. 96-2p at 4). The ALJ did not weigh Dr. Moskowitz's opinion using the section 404.1527 factors.

Second, because no treating physician contradicted Dr. Moskowitz's opinion regarding the impact of Plaintiff's depression on his pain and his ability to pay attention and concentrate, the ALJ could only reject Dr. Moskowitz's opinion using clear and convincing reasons supported by substantial evidence in the record. *Id*. at 632 (quoting *Reddick*, 157 F.3d at 725). The ALJ did not do so. Dr. Zorthain's conclusion that, based on physical impairments alone, Plaintiff could work an 8-hour day does not contradict Dr. Moskowitz's opinion that a combination of physical and mental impairments limited Plaintiff to working only 6 hours a day. *See Orn*, 495 F.3d at 634-35 ("The ALJ's reason for rejecting Dr. Doerning's opinion—that the record did not contain evidence of 'decreased range of motion' or 'neurological deficits'—is not 'legitimate' because it is not responsive to Dr. Doerning's opinion based on Orn's respiratory problems. . . . [A]n ALJ must evaluate the physician's assessment using the grounds on which it is based.").

Third, the AO rejected Dr. Tantiyavarong's opinion in part because she did not identify how long the limitations "have been present or are expected to last[;]" there was no evidence of complaints of attention in the medical record; and "no mental status exam findings that suggest ongoing problems with attention and concentration." AR 2. To the extent the AO rejected Dr. Tantiyavarong's opinion because she did not sufficiently complete an SSA form, the proper recourse was to ask the treating physician to provide additional information. *See* HALLEX I-2-6-56 ("The regulations provide that the ALJ will look fully into the issues . . . . An ALJ has a duty to ensure that the administrative record is fully and fairly developed."). The AO also rejected the opinion because no mental status exam findings supported it, but the ALJ did not order a behavioral health evaluation despite Dr. Flattery's recommendation one be conducted.

Under these circumstances, the Court finds the ALJ failed to develop the record. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper

15

evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citations omitted). The three doctors who considered the impact of Plaintiff's mental health on his limitations opined he could not work; the doctor who only considered Plaintiff's physical limitations opined he could. This is an ambiguity the ALJ should have attempted to resolve, especially where the SSA Examiner recommended Plaintiff be referred for a mental health evaluation. The ALJ "was not free to ignore Dr. [Flattery's] specific recommendation that a [behavioral health evaluation] be obtained. That [s]he did so constitutes reversible error." *Id*. at 1151.

## B.    Plaintiff's Credibility

Plaintiff argues the ALJ selectively interpreted medical evidence of record to support an opinion that his statements about the severity of his back, foot and abdominal pain, and his incontinence were not credible. Where there is no showing that a claimant is malingering, and where the record includes objective medical evidence establishing that a claimant suffers from an impairment that could reasonably produce the symptoms complained of, an ALJ can only make an adverse credibility finding based substantial evidence under the "clear and convincing" standard. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). In *Carmickle*, the ALJ rejected the claimant's assertion that he had to change positions constantly when sitting based on the claimant's testimony that he had trouble sitting through longer classes, but could prop his feet up or lean forward to relieve his discomfort, and did not state he constantly adjusted his position while in class. *Id*. The claimant testified he could sit for 15 minutes in one position and the ALJ included that limitation in his RFC assessment. The Ninth Circuit held that, on the record, the ALJ's interpretation of the evidence was reasonable and would not be second guessed. *Id*. (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)). The ALJ also rejected the claimant's

testimony he could only lift 10 pounds occasionally in favor of his treating physician's contradictory opinion he could lift 10 pounds frequently. The Ninth Circuit held this was substantial evidence: "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Here, the ALJ identified the testimony that was not credible, and offered substantial evidence under the clear and convincing standard to support that finding. The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. She found the objective findings supported a finding that Plaintiff was limited to sedentary work with occasional postural changes, but did not support a finding that Plaintiff was unable to sit for long periods or would need unusually frequent bathroom breaks due to incontinence. AR 30 ("Notably, the claimant did not allege any difficulty with sitting."). The ALJ noted the objective findings, post-surgery, showed Plaintiff had been recovering from diverticulitis, but there was no suggestion of recurrent diverticulitis, and none of the objective findings suggested Plaintiff could not perform sedentary work. AR 29. She found the record contained evidence Plaintiff experienced diarrhea starting in August 2012 and a few times thereafter, but that it was suspected to be viral-related; while the treatment records documented occasional problems, there was insufficient evidence of daily incontinence such that she could not find Plaintiff would need restroom breaks greater than those permitted in a normal work day. AR 29. She found his allegations of back and foot pain only partially credible because: (1) there was sparse evidence of treatment for pain; (2) imaging revealed only mild abnormalities; (3) physical examinations were unremarkable; (4) throughout 2012-2013, Plaintiff's treaters observed he had a normal, steady gait, and only observed him walking with a cane in March 2014, immediately after abdominal surgery; (5) he was prescribed medication, and in March 2014 reported his pain was "well controlled" with medication; (6) he did not pick up a prescription for Lyrica for his foot pain, "raising doubt regarding the severity of his symptoms"; (7) he was independent in his activities of daily living, and able to take the bus, suggesting an ability to perform at least

sedentary work; and (8) he appeared well and neatly groomed at the hearing.  AR 29-30.

The ALJ presented multiple clear and convincing reasons why she found Plaintiff's testimony only partially credible, and her interpretation of these facts is, on this record, reasonable. On remand, the ALJ nonetheless will need to reassess her credibility finding in light of any new information adduced regarding Plaintiff's depression and its contribution to his pain and/or limitations.

## CONCLUSION

"Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits).

The Court concludes this case should be remanded for further administrative proceedings so the ALJ can obtain a behavioral health evaluation and reconsider the medical evidence associated with Plaintiff's prior claim and her assessment of Plaintiff's credibility based on the results of that evaluation. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is particularly appropriate.").  For these reasons, and because the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's decision.  This case is **REMANDED** for further administrative proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: March 15, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge